## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT P. LAROBINA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     NO. 3:10cv1279 (MRK) |
| | : |
| WELLS FARGO BANK, N.A., | : |
| | : |
| Defendant. | : |

### MEMORANDUM OF DECISION

In his Second Amended Complaint ("SAC") [doc. # 46], Plaintiff Vincent Larobina brings fourteen claims against Wells Fargo Bank, N.A. ("Wells Fargo"). These claims allege negligence; common law recklessness; breach of the covenant of good faith and fair dealing; negligent misrepresentation; violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-100a, *et seq.*; *per se* violations of CUTPA through violations of the Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-646; breach of contract, and inducement to breach of contract. Mr. Larobina has not properly served the Second Amended Complaint on Wells Fargo, but Wells Fargo has waived this issue in its pending Motion to Dismiss. *See* Def.'s Mem. [doc. # 51] at 3.

The Court is sympathetic to Mr. Larobina's disappointment resulting from the ongoing effects of the recent financial crisis and his frustration with what appear to be Wells Fargo's bureaucratic mistakes. However, for the reasons described below, the Court finds that the majority of his claims cannot survive Wells Fargo's pending Motion to Dismiss [doc. # 50]. However, one claim—Count Thirteen, which states a CUTPA violation based on a violation of

the CCPA—does state a claim upon which relief may be granted. Accordingly, Wells Fargo's motion is granted in part and denied in part.

## I.

These factual allegations are primarily taken from the Second Amended Complaint [doc. # 46], which the Court accepts as true for the purposes of this motion. *See Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011). They are supplemented with information from the exhibits attached to Wells Fargo's motion to dismiss, consisting of mortgage agreements between the parties mentioned repeatedly in Mr. Larobina's complaint. *See DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

On or around March 12, 2007, Mr. Larobina signed an agreement with Wachovia to borrow $250,000.00 at a fixed interest rate of 5.87%. The agreement notes that "[i]nterest will accrue on the entire Principle balance outstanding at any time" and that it will be charged every day. Def.'s Mem. [doc. # 51] Ex. A (Mortgage Agreement) ¶ 2. Importantly, the agreement warns that "[i]f [the mortgagor's] payments are received after the due date, even if received before the date a Late Charge as permitted by Section 4 applies, [the mortgagor] may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal. This is a result of the accrual of daily interest." *Id.*

The agreement provides that Mr. Larobina is responsible for making 360 monthly payments of $1,484.50 beginning on May 11, 2007. It is clearly states that each payment will be applied first toward the amount of accrued unpaid interest, then to any optional insurance

premiums due, then to any applicable unpaid charges, and then to unpaid principal. The agreement further provides that if a payment is not received in full within ten days of when it is due, Connecticut residents "will pay a late charge equal to 5% of the unpaid portion or $10.00, whichever is less." *Id.* ¶ 4. At the inception of the note, Wachovia issued Mr. Larobina a coupon book that required monthly payments of $1,484.50.

Wells Fargo purchased Wachovia in September of 2008 and, as a successor in interest, Wells Fargo is liable for any liability arising from Wachovia's actions. When Wells Fargo took over the mortgage, it began issuing statements to Mr. Larobina captioned "Home Equity Statements" (presumably as opposed to "Mortgage Statements") which sought payment for only $1,000.00-$1,100.00 per month. Mr. Larobina continued to tender payments of $1,484.50 each month. When Mr. Larobina telephoned Wells Fargo to ask about the apparent underbilling, a customer service representative stated that it was likely a mistake.

Wells Fargo's monthly statements show that Mr. Larobina is not in arrears or delinquent on his mortgage. However, Mr. Larobina receives a monthly notice from Wells Fargo that he is delinquent in his account. The monthly notices of delinquency vary, but are in the $2,000.00-$2,500.00 range.

Although Mr. Larobina has always tendered the full mortgage payment, he sometimes takes advantage of the grace period. When he does so, Mr. Larobina receives calls from various toll free numbers, allegedly from Wells Fargo representatives seeking to collect the delinquency. Mr. Larobina sometimes receives ten to fifteen calls per day, including Sundays, though the caller does not leave messages on the answering machine. Mr. Larobina has found that the toll free numbers are owned by Wells Fargo and that there are websites where others complain of similar phone calls from these numbers.

## II.

The Court must apply a familiar standard when ruling on any motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure.* The Court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson*, 631 F.3d at 63 (quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing the plausibility of a plaintiff's allegations, the question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Twombly*, 550 U.S. at 556; *see also Arista Records*, *LLC v. Doe 3,* 604 F.3d 110, 120–21 (2d Cir. 2010) ("[W]e reject [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."). Simply put, "[w]hile a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Matson*, 631 F.3d at 63 (quoting *Iqbal,* 129 S. Ct. at 1949).

## III.

### A.

Mr. Larobina's first four claims—for negligence, common law recklessness, breach of the covenant of good faith and fair dealing, and negligent misrepresentation—are all based on the

same alleged actions and resulting injury: namely, that Wells Fargo and Wachovia's management practices precipitated the financial crisis, which in turn resulted in the devaluation of his house. Specifically, Mr. Larobina claims that "banks such as Wells Fargo and Wachovia, as well as other financial institutions, caused the financial crisis," that "Wells Fargo and Wachovia['s actions] were a substantial factor in causing the collapse in the real estate market attendant to the financial crisis," and that "Wells Fargo (individually and as a successor in interest to Wachovia) continues to undermine any recovery in the market." SAC [doc. # 46] ¶¶ 24, 26. As a result, "the decline in the value of [Mr. Larobina's] Property was occasioned, in overwhelming part, by the banks (specifically here—Wells Fargo and Wachovia)—who in their effort to gain wrongful profit described above, caused a dramatic decline in the value to the Property." *Id.* ¶ 50.

To bring a claim in federal court, a plaintiff must first establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010). To do so,

> a plaintiff must show [1] that he suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; [2] that there was a causal connection between the injury and the conduct complained of; and [3] that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Carver*, 621 F.3d at 225 (quoting *Lujan*, 504 U.S. at 560) (alternation and quotation marks omitted). "A plaintiff must demonstrate standing for each claim and form of relief sought." *Id.* (alteration and quotation marks omitted). The causal connection requirement is satisfied if the injury is fairly traceable to the challenged action of the defendant—in other words, it cannot be the result of the independent action of some third party. *See Lujan*, 504 U.S. at 565.

Mr. Larobina's alleged causation between Wells Fargo's actions and his injury is too attenuated for these claims to survive the motion to dismiss. Mr. Larobina himself admits that

"other financial institutions," SAC [doc. # 46] ¶ 24, in addition to Wachovia and Wells Fargo, contributed to the financial crisis. Other potential causes include governmental laxity in financial regulation and excessive borrowing by households and Wall Street. Given the sheer breadth of possible intervening independent third-party actions, this Court cannot find that Mr. Larobina's house's depreciation is fairly traceable to the actions of two banks. *See Lujan*, 504 U.S. at 565; *see also Wells Fargo Bank, N.A. v. Ash Org.*, No. CV-09-188-MO, 2009 WL 4884467, at *5 (D. Or. Dec. 8, 2009) ("Although [defendants] may have suffered financial losses in the recession, the causes of the recession are so numerous that defendants' losses are not fairly traceable to Bank of America's lending practices alone.").

Additionally, this subset of Mr. Larobina's claims also fail to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). First, plaintiffs alleging negligence and recklessness must demonstrate that a duty was breached. *See, e.g.*, *LaFlamme v. Dallessio*, 261 Conn. 247, 251 (2002) (listing the elements of a negligence actions as including duty, breach, causation, and actual injury); *Sheiman v. Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 46 (Conn. App. Ct. 1985) ("To be legally sufficient, a count based on reckless and wanton misconduct must, like an action in negligence, allege some duty running from the defendant to plaintiff."). In their role as mortgagees, neither Wells Fargo nor Wachovia owed Mr. Larobina a legal duty to conduct their businesses at the national level in a way that would not impair the value of Mr. Larobina's Connecticut property. *See Southbridge Assoc., LLC v. Garofalo*, 53 Conn. App. 11, 19 (Conn. App. Ct. 1999) ("A lender has the right to further its own interest in a mortgage transaction and is not under a duty to represent the customer's interest. Generally there exists no fiduciary relationship merely by virtue of a borrower-lender relationship between a bank and its customer.").

Mr. Larobina's mortgage agreement also does not impose such a duty, a necessary and absent element of his breach of the covenant of good faith and fair dealing claim. *See Landry v. Spitz*, 102 Conn. App. 34, 47 (Conn. App. Ct. 2007) (finding that, in order to state a claim for a breach of the covenant of good faith and fair dealing, a plaintiff must tie his count "to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty" (quotation marks omitted)). Nor does Mr. Larobina allege facts to support a conclusion that Wachovia or Wells Fargo acted in bad faith. *See Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 281 Conn. 227, 298 (2007) ("To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (alterations and quotation marks omitted)).

Finally, Mr. Larobina fails to assert a false statement of fact in his misrepresentation claim. *See Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 626 (2006) (requiring, *inter alia*, "a misrepresentation of fact" as an element of a negligent misrepresentation claim). Mr. Larobina states that "Wachovia represented itself to be a professional and stalwart bank, making conservative and wise investments." SAC [doc. # 46] ¶ 71. Even if Mr. Larobina relied on this or similar Wachovia claims, these are merely statements of opinion—not fact—and therefore cannot satisfy the requirements of a false misrepresentation claim. *See, e.g.*, *Barton v. City of Bristol*, 291 Conn. 84, 104 (2009) (finding that the trial court properly determined, as a matter of law, that expressions of opinion do not constitute statements of fact for the purposes of stating a negligent misrepresentation claim); *see also In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 354 (S.D.N.Y. 2011) ("[D]efendants' statements about their 'conservative' underwriting and risk management constitute corporate puffery rather than actionable misrepresentations.");

*Ormsby v. Nationwide Mut. Fire Ins. Co.*, No. CV 990429984, 2000 WL 739606, at *7 (Conn. Super. Ct. May 25, 2000) (finding, in the context of a fraud analysis, that Nationwide's slogan, "Nationwide is on your side," and Nationwide's assurances of "fast, fair and friendly service" were statements of opinion, not fact). No reasonable person would conclude that Wachovia's alleged statements were "intended and understood as one[s] of fact as distinguished from one[s] of opinion." *Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) (quotation marks omitted).

Accordingly, because he lacks standing and has failed to state a claim upon which relief may be granted, Mr. Larobina's first four claims—for negligence, recklessness, breach of the covenant of good faith and fair dealing, and negligent misrepresentation—are all dismissed.

## B.

Mr. Larobina's fifth, sixth, eighth, ninth, eleventh, thirteenth, and fourteenth claims all allege CUTPA violations. All but Count Thirteen are addressed in this section; Count Thirteen is addressed later in this Court's analysis.

### 1.

Count Five alleges that Wells Fargo's broadly expressed intention to help struggling homeowners and to stabilize the economy was false, deceptive, or misleading because Wells Fargo did not assist Mr. Larobina with his mortgage when he requested help.

The broad statements of one Wells Fargo executive of Wells Fargo's intention to help struggling homeowners generally does not mean that Wells Fargo owes Mr. Larobina—who maintains that he has made every mortgage payment within the proscribed grace period—a duty to modify the terms of his mortgage. *See MTGLQ Investors, L.P. v. Baron*, No. CV-08-5023741-

S, 2010 WL 4722131, at *2 (Conn. Super. Ct. Oct. 26, 2010) (stating that, under the common law, "a mortgagee has no duty to modify a mortgage"). Nor has Wells Fargo, on the basis of the facts alleged by Mr. Larobina, "promulgate[d] a retail offer and then renege[d] on it." Pl.'s Resp. [doc. # 57] at 23. Furthermore, although Wells Fargo is engaged in a class action lawsuit alleging that it induced individuals to default before assisting them with loan modifications, Mr. Larobina has not defaulted on his mortgage and therefore has not suffered damages. Count Five therefore fails.

### 2.

Count Six alleges that Mr. Larobina should only be paying $1,478.05, rather than $1,484.50, per month to pay off his mortgage. Mr. Larobina argues that the $6.45 discrepancy results in his monthly overpayment. However, Mr. Larobina provides no basis for his calculation of what he should pay per month. Furthermore, Mr. Larobina agrees that the mortgage agreement explicitly provides that he is obligated to make 360 monthly payments of $1,484.50. Although in his briefings Mr. Larobina implies that the discrepancy may be a mistake, made by "inadvertence or deception," *id.* at 25, he does not allege *facts* supporting a finding of mistake, fraud, unconscionability, or any other basis for the Court to disregard the express contractual terms, *see Iqbal*, 129 S. Ct. at 1949. The Court is bound to enforce the clear language of the contract and Count Six therefore fails. *See, e.g.*, *O'Neill v. RiverSource Life Ins. Co.*, No. 3:10-CV-00898 (JCH), 2011 WL 2442091, at *3 (D. Conn. Jun. 14, 2011) ("In general, a court must enforce contract provisions as written: each party is bound by the provisions it agreed to upon executing the contract.") (citing *Aetna Cas. & Sur. Co. v. Murphy*, 206 Conn. 409, 412 (1988)).

3.

Count Eight alleges that Wells Fargo has failed to clarify the nature of the delinquency for which Mr. Larobina regularly receives notices. It also alleges that the delinquency notices themselves constitute false and misleading billings, as Mr. Larobina has never missed a mortgage payment.

A CUTPA claim requires that a plaintiff "establish both that the defendant has engaged in a prohibited act, *and* that, as a result of this act, the plaintiff suffered an injury." *Stevenson Lumber Co.-Suffield, Inc. v. Chase Assocs., Inc.*, 284 Conn. 205, 214 (2007) (quotation marks omitted) (emphasis in original). A plaintiff need only establish an "ascertainable loss" to state a CUTPA claim, which does not require plaintiff "to prove a specific amount of actual damages in order to make out a prima facie case." *Johnson Electric Co. v. Salce Contracting Assocs., Inc.*, 72 Conn. App. 342, 354-55 (Conn. App. Ct. 2002) (alteration and quotation marks omitted). Instead, a plaintiff seeking to establish a CUTPA violation must simply demonstrate a loss—a "deprivation, detriment and injury"—that is "capable of being discovered, observed or established." *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 613 (1981) (quotation marks omitted).

Mr. Larobina argues that his injury is the deprivation "of his contractual mortgage terms, the los[s] of his contractual right to know the nature of any alleged delinquency, his right to remedy any delinquency without a further accumulation of fees, charges, penalties and/or accumulated interest and his rights under the referenced public policies." SAC [doc. # 46] ¶ 111.

However, Mr. Larobina does not appear to have "lost" his mortgage terms or any contractual rights, as there is no evidence in the agreement of the mortgagee's duty to inform Mr. Larobina of a delinquency or of Mr. Larobina's right to remedy any such delinquency without a

further accumulation of fees and penalties. *See* Def.'s Mem. [doc. # 51] Ex. A ¶ 5 (Mortgage Agreement) ("*At its option or if required by law*, the Note Holder *may* send [the mortgagor] a written notice informing [him] of said Default and acceleration." (emphasis added)). Mr. Larobina attempts to support his claim with a citation to his mortgage, but the relevant text applies only should the mortgagee chose to accelerate payment upon default, which is not alleged here. *See* Def.'s Mem. [doc. # 51] Ex. B ¶ 21 (Mortgage) ("Lender shall give notice to Grantor *prior to acceleration* following breach of any covenant or agreement in this Security Instrument . . . ." (emphasis added)).

Furthermore, Mr. Larobina maintains that he is not delinquent on his payments, he has not overpaid Wells Fargo in response to the delinquency notice, and notwithstanding the apparently mistaken delinquency notice, Mr. Larobina's monthly statements from Wells Fargo "unequivocally show that the plaintiff is neither in arrears on his mortgage, or is any way delinquent." *Id.* ¶ 88. Therefore, Mr. Larobina has not sufficiently alleged an injury to allow Count Eight to proceed.

4.

In Count Nine, Mr. Larobina claims that (1) his monthly statements from Wells Fargo are misnamed; (2) the demanded monthly payment is significantly less than his monthly obligation; (3) the monthly statements show that he is current on his payments; and (4) the delinquency notices indicate that he is delinquent. Mr. Larobina argues that these constitute false and misleading billings, a *per se* violation of the Federal Trade Commission ("FTC") Act, 15 U.S.C. §§ 41-58, and therefore also a violation of the CCPA and CUTPA.

Because CUTPA claims require that the plaintiff establish an injury, *see Stevenson Lumber Co.*, 284 Conn. at 214, false and deceptive billing claims are usually brought for actual

11

overbilling, *see, e.g.*, *F.T.C. v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193, 199-200 (S.D.N.Y. 2000) (finding the FTC likely to succeed in demonstrating that overbilling constituted a violation of § 5 of the FTC Act). It might be possible that a CUTPA claim could be brought for underbilling, if an underbilled individual incurred additional interest obligations in reliance on the underbilling.

However, Mr. Larobina maintains that, notwithstanding the alleged underbilling, he has continued to pay the required $1,484.50 monthly payment in accordance with the terms of his mortgage agreement. Mr. Larobina also states that his monthly statements from Wells Fargo demonstrate that he is not in delinquency on any of his payments. Accordingly, as he has not paid less than what was required on the agreement in reliance on the alleged underbilling and thereby become delinquent on his mortgage, Mr. Larobina has suffered no monetary damages.

Mr. Larobina argues that he has suffered an ascertainable loss of "his contractual right to know the current status of his mortgage; and his right to receive non-contradictory billing statements (in the contract amount) in order that he know the specific accounting of his Note; and to receive accurate accounting and amortization." SAC [doc. # 46] ¶ 120. The Court does not find, and Mr. Larobina does not identify, any provision in Mr. Larobina's contract granting him such rights. Instead, the agreement specifically provides that the mortgagor waives his right to require the mortgagee "to give notice that amounts due have not been paid." Def.'s Mem. [doc. # 51] Ex. A ¶ 8 (Mortgage Agreement). While the Court agrees that Wells Fargo should provide Mr. Larobina with accurate information about the status of his loan, and may even be obligated to do so under other federal or Connecticut laws, Mr. Larobina has not stated a CUTPA violation.

Mr. Larobina claims that if there is a delinquency, the fact that Wells Fargo is not reporting it in the monthly statement is improper, as it deprives him "of the ability to

immediately redress any alleged delinquency—amounting to further charges, penalties and/or fees." SAC [doc. # 46] ¶ 120. As Mr. Larobina maintains that he has made the required monthly payments on his mortgage, as his monthly statement from Wells Fargo indicates that he is not in delinquency on his mortgage, and as he has not paid the apparently mistaken delinquency notices, there appears not to be a delinquency and Mr. Larobina has apparently suffered no damages due to the delinquency notices.

Finally, in his responsive briefing, Mr. Larobina argues that Wells Fargo has or is attempting to unilaterally convert his mortgage into an interest-only home equity loan. In support of this claim, he notes that his monthly statements are titled "Home Equity Statements" and that the requested payments are much less than they should be. In response to his question regarding the underbilling, however, a Wells Fargo representative noted that this was likely a mistake that would be corrected. Although the Court finds that Count Nine, as augmented in subsequent briefing, fails to state "'a claim for relief that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), it reminds both parties that a mortgage agreement cannot be unilaterally converted into another type of loan agreement.

### 5.

Count Eleven claims that Wells Fargo is amortizing the Note incorrectly and issuing billings in the incorrect amount. Mr. Larobina does not provide any specific facts to distinguish this count from Counts Six, Eight, and Nine. To the extent the analysis for Count Eleven is similar to the earlier counts, it fails for similar reasons; to the extent it is different, Mr. Larobina has failed to include "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

6.

In Count Fourteen, Mr. Larobina claims that the coupon book is misleading, as it claims that an amount of $1,484.50 is due by the tenth of the month or an amount of $1494.50 is due by the twenty-first of the month. Mr. Larobina argues that any average consumer would believe that, as long as a payment was made within the grace period, the mortgagor would not incur additional obligations. Mr. Larobina states that, due to daily compounded interest, this reasonable reading is wrong. *See Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990) (requiring, to prove deception under CUTPA, that the plaintiff demonstrate that "the consumers must interpret the message reasonably under the circumstances").

The Court disagrees. Mr. Larobina's mortgage agreement clearly states that "[i]nterest will accrue on the entire Principle balance outstanding at any time" and that it will be charged every day. Def.'s Mem. [doc. # 51] Ex. A ¶ 2 (Mortgage Agreement); *see also id.* ("If [the mortagor's] payments are received after the due date, *even if received before the date a Late Charge as permitted by Section 4 applies*, [the mortgagor] may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal. This is a result of the accrual of daily interest." (emphasis added)). The agreement further provides that if a payment is not received in full within 10 days of when it is due, Connecticut residents "will pay a late charge equal to 5% of the unpaid portion or $10.00, whichever is less." *Id.* ¶ 4. A reasonable consumer would conclude that the extra $10 constituted a late charge, not a payment that would cover the interest that accrued during the time that elapsed between when the monthly payment was due and when it was actually paid. Count Fourteen therefore fails.

C.

Mr. Larobina's seventh and tenth counts allege breaches of contract. Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Chiulli v. Zola*, 97 Conn. App. 699, 706-07 (Conn. App. Ct. 2006) (quotation marks omitted).

Count Seven alleges that, to the extent there is a delinquency on his mortgage that arose during the time Wachovia was the mortgagee, Wachovia had a contractual duty to inform Mr. Larobina of the delinquency. Assuming that such a delinquency did arise, Mr. Larobina maintains that Wachovia's failure to notify Mr. Larobina of it allegedly constitutes a breach of the contract.

Putting aside the fact that Mr. Larobina maintains that he is not and has never been in default on his mortgage, the relevant text of the agreement provides that "[a]t its option or if required by law, the Note Holder *may* send [the mortgagor] a written notice informing [him] of said Default . . . ." Def.'s Mem. [doc. # 51] Ex. A ¶ 5 (Mortgage Agreement) (emphasis added). Furthermore, the agreement specifically provides that the mortgagor waives his right to require the mortgagee "to give notice that amounts due have not been paid." *Id.* ¶ 8. Mr. Larobina attempts to support his claim with a citation to his mortgage, but as noted above the relevant text applies only should the mortgagee chose to accelerate payment upon default, which is not alleged here. *See* Def.'s Mem. [doc. # 51] Ex. B ¶ 21 (Mortgage) ("Lender shall give notice to Grantor *prior to acceleration* following breach of any covenant or agreement in this Security Instrument . . . ." (emphasis added)). As the agreement does not require the mortgagee to provide the mortgagor with written notice, and as Mr. Larobina has not identified any other contractual

provision that would require such action, Count Seven fails to state a claim for breach of contract.

Count Ten alleges that Wells Fargo is not accounting properly, as every month it allocates a wildly different amount of his monthly payment to principal and interest. For example, "on June 21, 2010 plaintiff's payment [of $1,484.50] was allocated $1,161.67 to interest; and $322.83 to principal. However, on December 21, 2010, plaintiff's payment was allocated as $1,305.37 to interest, and only $189.13 to principal. And then, [i]n January 2011, plaintiff's payment was allocated $613.80 [to] interest; [and $]880.70 [to] principal." SAC [doc. # 46] ¶ 125. Mr. Larobina also claims that Wells Fargo is wrongfully underbilling him each month.

Although the discrepancies in payments allocated to interest and principal are unusual, these facts, standing alone, are not sufficient "to raise a reasonable expectation that discovery will reveal evidence" supporting Mr. Larobina's claim. *Twombly*, 550 U.S. at 556. The mortgage agreement anticipates that "[i]nterest will accrue on the entire Principle balance outstanding at any time," that interest will be charged every day, and that "[i]f [the mortgagor's] payments are received after the due date, even if received before the date a Late Charge as permitted by Section 4 applies, [the mortgagor] may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal." Def.'s Mem. [doc. # 51] Ex. A ¶ 2 (Mortgage Agreement). Therefore, to make his claim plausible, Mr. Larobina should have also alleged sufficient facts demonstrating that his admitted failures to always pay his bill on time (or other possible actions) did not result in the increased payments to interest. His failure to do so, after having been given an opportunity to amend his complaint, means that this claim must fail.

With regard to the allegations of underbilling, Mr. Larobina cannot assert a claim for breach of contract on this basis because he cannot show damages. Mr. Larobina maintains that he has paid the required $1,484.50 monthly payment in accordance with the terms of the agreement. Mr. Larobina also notes that his monthly statements from Wells Fargo demonstrate that he is not in delinquency on any of his payments. Accordingly, as he has not paid less than what was required on the agreement in reliance on the alleged underbilling, Mr. Larobina has suffered no damages.

### D.

Count Twelve alleges an inducement to breach claim on the basis that, by underbilling him, Wells Fargo is attempting to induce Mr. Larobina into a breach in violation of CUTPA.

Under Connecticut law, one may not bring an inducement to breach claim against a party with whom one is in a contractual relationship. *See, e.g.*, *Waste Conversion Tech., Inc. v. Midstate Recovery, LLC*, No. AANCV044000948, 2008 WL 5481231, at *20 (Conn. Super. Ct. Dec. 3, 2008) (noting that Connecticut appellate courts have adopted § 766 of the Restatement (Second) of Torts, which provides that one "who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract" (alteration and quotation marks omitted)).

In his responsive briefing, Mr. Larobina clarifies that he is not bringing an inducement to breach claim, but rather alleging that the underbilling is a deceptive practice that violates CUTPA. However, Mr. Larobina has not alleged an injury, as is required for a successful CUTPA claim. *See Stevenson Lumber Co.*, 284 Conn. at 214.

Finally, in his responsive briefing, Mr. Larobina elaborates on his attendant argument that, alternatively, Wells Fargo is attempting to change the terms of his mortgage to a home equity loan. For the same reasons provided in the analysis of Count Nine, this argument fails.

### E.

The CCPA provides a private cause of action with potential remedies of "actual damages," "additional damages as the court may award, not to exceed one thousand dollars," and the costs and attorneys fee of a successful action. Conn. Gen. Stat. § 36a-648. Although a plaintiff need not allege pecuniary loss to bring a claim under CCPA, *see Dattilio v. HSBC Bank Nevada, N.A.*, No. CV116011573, 2012 WL 695458, at *5 (Conn. Super. Ct. Feb. 1, 2012) (reading CCPA as permitting a private cause of action against anyone who has been harmed—in other words, anyone who suffers "harmful consequences," including those who suffered only "annoyance, stress, fear, worry" or other such reaction to certain practices), it appears from the text of the statute that the legislature envisioned that a private plaintiff would have to seek some form of monetary damages.

Unlike each of his other claims, in which Mr. Larobina invariably requests some form of monetary damages, in Count Thirteen he seeks only a declaratory judgment that Wells Fargo has violated the CCPA and an injunction requiring Wells Fargo to either leave a message on an answering machine or to not make additional phone calls that day. Wells Fargo argues that Mr. Larobina has no private cause of action under CCPA for declaratory or injunctive relief.

As Mr. Larobina does not contest Wells Fargo's argument, the Court need not decide this unsettled question of state law. Instead, in his responsive briefing Mr. Larobina abandons his claim of a CCPA violation and instead maintains that Count Thirteen states an action for a violation of CUTPA, and that the CCPA references "merely represent[] the alleged violation of

public policy that forms the factual predicate of a CUTPA violation." Pl.'s Resp. [doc. # 57] at 36; *see also Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 78 (D. Conn. 2004) (noting that a CCPA violation "could constitute a violation of public policy and thereby form the basis for a CUTPA claim").

In determining whether a practice constitutes a CUTPA violation, a count must consider, *inter alia*, "'whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness.'" *Tillquist v. Ford Motor Credit Co.*, 714 F. Supp. 607, 616 (D. Conn. 1989) (quoting *Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 756 (1984)). Therefore, a violation of CUTPA may be established by showing a practice that constitutes a breach of public policy, which might result from the violation of another statute. *See id.* (citing *Web Press Serv. Corp. v. New London Motors, Inc.*, 203 Conn. 342, 355 (1987); *Conaway v. Prestia*, 191 Conn. 484, 464 (1983)). With this in mind, the Court reviews the CCPA standards.

The CCPA prohibits a creditor from "us[ing] any abusive, harassing, fraudulent, deceptive, or misleading representation, device or practice to collect or attempt to collect a debt in violation of section 36a-646 or the regulations adopted pursuant to section 36a-647 . . . ." Conn. Gen. Stat. § 36a-648. Section 36a-646 provides in relevant part that "[n]o creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." Conn. Gen. Stat. § 36a-646. The regulations adopted pursuant to § 36a-647 permit a creditor to make calls to a debtor, but "[a] creditor shall not engage in any conduct the natural consequence of which to a reasonable person would be to

harass or abuse such person in connection with the collection of a debt." Conn. Agencies Regs. § 36a-647-5. "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously if the natural consequence of such action to a reasonable person is annoyance, abuse or harassment" or, with some exceptions, "placing telephone calls without meaningful disclosure of the caller's identity" constitute violations of this regulation. *Id.*

In support of his claim in Count Thirteen, Mr. Larobina notes that, on several occasions, he has not paid his mortgage on the tenth of the month, but rather takes advantage of the grace period. During these times, Wells Fargo initiates phone calls to remind him that payment was due. Mr. Larobina recognizes that Wells Fargo has the right to make such calls, but alleges that they cross the line into harassment because, when he lets the calls go to his answering machine, Wells Fargo will not leave a voice mail, but instead will call up to ten to twelve times per day. Mr. Larobina sometimes answers the phone, only to find that no one is on the line, leading him to believe that the calls are computer generated. Mr. Larobina has located websites where other Wells Fargo customers detail similar experiences with repetitive and harassing phone calls. The Court draws the reasonable inference from these facts that Mr. Larobina suffered, at the very least, annoyance as a result of these calls and therefore was harmed by them. *See Dattilio*, 2012 WL 695458, at *5.

Noting that the case law regarding the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, might provide useful guidance, Wells Fargo argues that courts have regularly found that worse practices did not constitute harassment as a matter of law. However, the Court is not convinced by Wells Fargo's examples, as all of them address situations where there were significantly fewer calls per day than the ten to twelve calls Mr. Larobina allegedly received. *See Waite v. Fin. Recovery Serv., Inc.*, No. 8:09-cv-02336-T-33AEP, 2010 WL

5209350, at *4 (M.D. Fla. Dec. 16, 2010) (finding that approximately 30 calls per month for two months, when there were no more than four calls per day, did not raise a question for the jury); *Jiminez v. Accounts Receivable Mgmt., Inc.*, No. CV 09-9070-GW (AJWx), 2010 WL 5829206, at *2-*5 (C.D. Cal. Nov. 15, 2010) (finding that 68 calls over a 115 day period, with only one day when more than two calls were made (three calls were made), did not violate the FDCPA as a matter of law); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1237 (E.D. Cal. 2010) (finding that the collectors' alleged practice of calling daily or near daily did not constitute harassment as a matter of law); *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305-06 (M.D. Fla. 2010) (finding that 57 calls, with a maximum of seven calls in one day, did not violate the FDCPA on the basis that the collector never spoke with the debtor, was never asked to cease calling, and never called back on the same day it left a message); *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *2, *7 (E.D. Mich. Sep. 30, 2009) (holding that 20 unsuccessful and 2 successful (according to defendant) or that 50 unsuccessful and 10 successful (according to plaintiff) calls over one month were not harassing based on the facts of the case); *Udell v. Kan. Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143 (D. Kan. 2004) (holding that four calls over seven days without leaving messages did not violate the FDCPA as a matter of law).

Taking the facts as alleged in the Complaint as true, the Court finds that Mr. Larobina has adequately stated a violation of public policy as codified in the CCPA. Drawing reasonable inferences from the stated facts in Mr. Larobina's favor, the Court also finds that he has adequately alleged that these calls meet the other two requirements for a CUTPA claim—that the practice is "immoral, unethical, oppressive, or unscrupulous" and that it "causes substantial injury." *Tillquist*, 714 F. Supp. at 616 (quoting *Sportsmen's Boating Corp.*, 192 Conn. at 756); *see also Bruce*, 308 F. Supp. 2d at 78-79 (noting that CUTPA, as a remedial statute, is to be

interpreted liberally and defining the "ascertainable loss" requirement as a loss "capable of being discovered, observed or established" (quotation marks omitted)). As Mr. Larobina has stated a CUTPA violation, Count Thirteen survives Wells Fargo's Motion to Dismiss.

## IV.

Wells Fargo's Motion to Dismiss [doc. # 50] is GRANTED IN PART and DENIED IN PART. For the reasons described above, Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Fourteen are DISMISSED. Count Thirteen remains. Discovery, which had been stayed pending resolution of this motion, may proceed with regard to Count Thirteen. The parties should submit a joint status report within 30 days from the entry of this order with revised discovery deadlines.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
        United States District Judge

Dated at New Haven, Connecticut: March 27, 2012.